## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

Brianna Y. Rechichar and Raymond "Chico" Acosta, )
                    Plaintiffs. )
   v. )
     )
Bud's Tree Care Inc. and Ryan Burnett, )
     )
                    Defendants. )

### COMPLAINT AT LAW

**Now Comes** Plaintiffs Brianna Y. Rechichar and Raymond "Chico" Acosta, by attorneys Dore Law Offices LLC, Daniel I. Schlade and James M. Dore, and in complaining against Defendants Bud's Tree Care Inc. and Ryan Burnett (cumulatively "Defendants"), state:

### Introduction

1. This action seeks redress for Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), as well as any related state law claims, for Defendants' failure to pay overtime wages owed, failure to pay owed wages under the Illinois Wage Payment and Collection Act ("IWPCA"), and breach of an employment agreement.

### Parties

2. Plaintiff Rechichar is a resident of the state of Illinois; she was employed by Defendants beginning in November 2024. Plaintiff Acosta is a resident of the state of Illinois; he was employed by Defendants beginning in November 2024.

3. Defendant Bud's Tree Care Inc. ("Bud's") is an Illinois corporation providing property management services, lawncare/landscaping, and snow removal; it is located, headquartered, and conducts business in on in Champaign, Illinois.

4. Defendant Ryan Burnett is an individual doing business in Champaign County, Illinois; he is the President and owner of Defendant Bud's.

5. Defendant Ryan Burnett is in charge of Defendant Bud's's employees.

6. Defendants Ryan Burnett exercised significant operational control over the corporate affairs of Defendant Bud's.

7. Defendants Ryan Burnett had the power to hire and fire Defendant Bud's's employees.

8. Defendant Ryan Burnett supervised and controlled employee work schedules and/or conditions of employment of Defendant Bud's employees.

9.     Defendant Ryan Burnett determined and/or had the ability to determine the rate and method of compensation of Defendant Bud's employees.

10.    Defendant Ryan Burnett maintained and/or controlled the employment records of Defendant Bud's employees.

11.    Defendants are "an enterprise engaged in commerce or in the production of goods for commerce" under 29 USC § 203(s)(1)(A)(i) and (ii) because they have annual gross volume of sales made or business done of at least $500,000; and because they are engaged in interstate commerce or in the production of goods for interstate commerce.  Additionally, they have more than five employees.

12.    Defendant Bud's is an "employer" as that term is defined in Section 203 of the FLSA, because it is a privately owned for-profit entity.

13.    Defendant Ryan Burnett is an "employer" as that term is defined in Section 203 of the FLSA, because: (1) s/he were Plaintiffs' head "boss"; (2) s/he had the power to hire and fire the employees, including Plaintiffs ; (3) s/he supervised and controlled Plaintiffs' work schedules and conditions of employment; (4) s/he determined the rate and method of payment for employees; and (5) s/he maintained employment records.

## Jurisdiction And Venue

14.    The Court possesses subject matter jurisdiction over the FLSA claim(s) pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §1337; and supplemental jurisdiction over any related state law claim(s) pursuant to 28 U.S.C. § 1367.

15.    Venue is proper in the Central District of Illinois because all underlying facts and transactions occurred in or about Champaign County, Illinois.

## Employment Agreement

16.    On or about October 24, 2024, Plaintiffs and Defendants executed an Asset Purchase Agreement ("APA").  Attached as Exhibit A is a true and accurate copy of the APA; Ex.. A is incorporated herein.

17.    The APA contained a section "Employment of Brianna and Chico" which states in relevant part:

"Upon Closing, Buyer shall employ Brianna and Chico, and they shall provide services to Buyer, on the following terms:

    (a)    employment shall be for a term of two (2) years from the Closing Date, unless terminated earlier as set forth below;

    (b)    annual salary for Brianna of $95,400 and for Chico of $68,900;

2

  (c) upon completion of the initial two (2) year term of employment, Brianna shall have the right to own ten percent (10%) of the shares of stock of Buyer;

  (d) Brianna and Chico (each an "Employee") each shall perform daily and weekly assignments, projects, and or jobs to the best of his/her abilities, and according to the standards and ethics adhered by Buds Tree Care.

  (e) In the event an Employee terminates his/her employment prior to the end of the initial two (2) year term, or in the event an Employee is terminated by Buyer "for cause," Employee shall have no further rights to compensation under this Agreement, and Employee shall not establish any business or work for any company in competition with Buyer's business within a fifty (50) mile radius of Buyer's principal place of business for a period of two (2} years from the date of termination of employment. For purposes of this Agreement, "Buyer's business" shall include landscaping, tree service, chemical spray, mowing, or outdoor services.

"For Cause" shall mean a situation where verbal warnings have been given and then an employee has been written up more than two times within a six month period, according to the same actions of discipline that all other employees are subject."

Ex. A, APA, Section 2.4.

18. Plaintiffs and Defendants closed on the APA and sale involved therein.

## COUNT I - VIOLATION OF THE FLSA – RECHICHAR V. DEFENDANTS

19. Plaintiff Rechichar reincorporates Paragraphs 1-18, as if set forth in full herein for Paragraph 19.

20. Plaintiff Rechichar began working for Defendants in November 2024 and was terminated in September 2025.

21. Plaintiff Rechichar worked for the Defendants removing trees, snowplowing, conducted site visits to customer properties, photographed job sites, loading trucks, organizing tools, delivering equipment, tools, and materials to job sites, transporting broken equipment to mechanics for repair as directed, resupplying crews, transporting materials, and creating content for online advertising and marketing, including capturing and producing social media footage..

22. Plaintiff Rechichar was required to clock in and out every day. In addition, Plaintiff Rechichar was required to be "on call" on weekends and afterhours to be available for tasks required by Defendants.

23. Defendants paid Plaintiff Rechichar a daily rate of $360.00 for each day she worked, with the exception of the work she performed while "on call" and on weekends; Plaintiff Rechichar worked on average 50 hours per week, for an effective hourly rate of $36.00 per hour.

24. Defendants misclassified Plaintiff Rechichar as an independent contractor when in fact Plaintiff Rechichar was an employee.

25.     Plaintiff Rechichar's wages were not based on the number of jobs performed or completed, nor was it based on the quality or efficiency of their performance.

26.     Plaintiff Rechichar was an "employee" of Defendants as that term is used in Section 203 of the FLSA because he was employed by Defendants to perform general worker duties, and they do not fall into any of the exceptions or exemptions for workers under the FLSA.

27.     Throughout Plaintiff Rechichar's employment, Defendants regularly scheduled and directed Plaintiff Rechichar to work in excess of forty (40) hours per week.

28.     Defendants did not pay Plaintiff Rechichar not less than one and a half (1.5) times the regular rate at which she was employed during the hours worked in excess of forty (40) hours per week.

29.     By engaging in this pay practice, Defendants deprived Plaintiff Rechichar of his rights under the FLSA and the IMWL to receive time-and-a-half pay for their overtime hours.

30      Defendants owe Plaintiff Rechichar one-and-a-half times the her regular wage rate of pay for each recorded overtime hour she worked each week during the relevant time period, plus liquidated damages in the same amount.

31.     Defendants' failure and refusal to pay Plaintiff Rechichar overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.

32.     Plaintiff Rechichar's base overtime wages owed are $7,980.00

   **WHEREFORE,** Plaintiff Brianna Y. Rechichar, respectfully prays for relief to the Court:

a. Finding that Defendant willfully violated the applicable wage provisions of the FLSA and by failing to pay overtime wages to Plaintiff Rechichar ;

b. All damages available, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

c. Granting judgment in favor of Plaintiff Rechichar for compensatory damages and liquidated damages to Plaintiff Rechichar in an amount to be determined at trial;

d. Awarding pre-judgment and post-judgment interest to Plaintiff Rechichar ;

e. Awarding all costs and reasonable attorney's fees incurred prosecuting the claims;

f. Awarding appropriate equitable and injunctive relief to remedy violations;

g. Awarding any further relief the Court deems just and proper.

## COUNT II - FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION OF THE IMWL - RECHICHAR V. DEFENDANTS

33.     Plaintiff Rechichar incorporates Paragraphs 1-32, as if set forth in full herein for this Paragraph 33.

34.     This count arises from Defendants' violation of the IMWL, by failing to pay Plaintiff Rechichar Illinois mandated overtime wages for all hours worked in excess of 40 hours in each individual work week in violation of 820 ILCS 105/4a(1).

35.     Defendants directed Plaintiff Rechichar to work as an employee, but she was not compensated at least at the Illinois-mandated minimum wage rate for all time worked.

36.     Plaintiff Rechichar was entitled to be paid not less than time-and-one-half her regular pay rate for all hours worked in excess of forty (40) hours per week.

37.     Defendants' failure to pay Plaintiff Rechichar time-and-one half her regular rate of pay for all hours worked in excess of forty (40) hours per week violate the IMWL.

38.     Pursuant to 820 ILCS 105/12(a), Plaintiff Rechichar is entitled to recover all unpaid overtime for all hours worked in excess of forty (40) hours per week for three (3) years prior to the filing of this suit, treble the amount of such underpayments, 5% for each month the underpayments remain unpaid, plus attorney's fees and costs.

   **Wherefore**, Plaintiff Brianna Y. Rechichar respectfully requests that the Court:

a. Enter a judgment for all unpaid overtime worked by Plaintiff Rechichar for hours worked in excess of forty hours per week for the three years preceding the filing of this lawsuit;

b. Award Statutory damages for Plaintiff Rechichar , including treble damages and 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 105/12(a) and/or 815 ILCS §205/2;

c. Declare that Defendants have violated the IMWL;

d. Award reasonable attorneys' fees and costs as provided by the IMWL; and/or

e. Grant such additional or alternative relief as this Honorable Court deems just and proper.

## COUNT III – FAILURE TO PAY WAGES IN VIOLATION OF THE IWPCA - RECHICHAR V. DEFENDANTS

39.     Plaintiff Rechichar reincorporates Paragraphs 1-18, as if set forth in full herein for Paragraph 39.

40.     Plaintiff Rechichar 's employment agreement with Defendants, contained in the APA, provided that Defendants would pay Plaintiff Rechichar $1,834.62 per week. Ex. A, Section 2.4.

41.     Plaintiff Rechichar worked for Defendants for 44 weeks, from November 2024 until September 2025.

42.     Pursuant to the Parties employment agreement in the APA, Plaintiff Rechichar should have been paid $80,723.08

43.     Throughout her employment, Plaintiff Rechichar was only paid $68,600.00.

44.     Plaintiff Rechichar was owed at least $12,123.08 plus any accrued vacation time and benefits at the time of her termination and such amount remains owed.

45.     Plaintiff Rechichar has requested payment of her owed wages from Defendants.

46.     Defendant refused to pay her the wages under the APA and any accrued vacation time and benefits.

47.     The Illinois Wage Payment and Collection Act ("IWPCA") provides:

"Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

820 ILCS 115/5.

48.     Since Plaintiff Rechichar's separation from Defendants, the next regularly scheduled payday for Plaintiff Rechichar has passed.

49.     Despite Plaintiff Rechichar's demands for her compensation, Defendant has refused to pay her such compensation, including owed wages, accrued vacation time, and any other amounts owed.

50.     As a result, Defendant has violated the IWPCA and is liable to Plaintiff Rechichar for all unpaid wages, benefits, and accrued vacation time; 5% interest per month in accordance with Section 14 of the IWPCA; and Plaintiff Rechichar's incurred costs and attorney's fees pursuant to Section 14 of the IWPCA.

   **WHEREFORE,** Plaintiff Brianna Y. Rechichar, respectfully prays for relief to the Court:

a. a finding that Defendants violated the IWPCA;

b. Enter a judgment against Defendants in any amount determined to be owed as compensation;

c. 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 115/14;

d. Award reasonable attorneys' fees and costs as provided by the IWPCA; and/or

e. Grant such additional or alternative relief as this Honorable Court deems just and proper.

### COUNT IV – RETALIATION IN IN VIOLATION OF THE IWPCA - RECHICHAR V. DEFENDANTS

51.     Plaintiff Rechichar reincorporates Paragraphs 39-50, as if set forth in full herein for Paragraph 51.

52.     The IWPCA provides:

"Any employer, or any agent of an employer, who discharges or in any other manner discriminates against any employee because that employee has made a complaint to his or her employer, to the Director of Labor or his or her authorized representative, in a public hearing, or to a community organization that he or she has not been paid in accordance with the provisions of this Act, or because that employee has caused to be instituted any proceeding under or related to this Act, or because that employee has testified or is about to testify in an investigation or proceeding under this Act, is guilty, upon conviction, of a Class C misdemeanor. An employee who has been unlawfully retaliated against shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, all legal and equitable relief as may be appropriate. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

820 ILCS 115/14(c)

53.     After closing on the APA, Plaintiff Rechichar became an employee of Defendants.

54.     Pursuant to the employment agreement contained in the APA, Defendants were required to pay Plaintiff Rechichar a salary of $1,834.62 per week. Ex. A, Section 2.4.

55.     Instead of classifying Plaintiff Rechichar as an employee, Defendants misclassified Plaintiff Rechichar as an independent contractor.

56.     Instead of paying Plaintiff Rechichar her salary of $1,834.62 per week, Defendants paid Plaintiff Rechichar a daily rate of $360.00 for each day worked, not counting her "on call" time and work on the weekends.

57.     Plaintiff Rechichar repeatedly complained to Defendants that they were in breach of the employment agreement contained in the APA by treating her as an independent contractor and in failing to pay her the required salary.

58.     Despite being informed of their failure to pay required wages and their misclassification, Defendants did not change Plaintiff Rechichar's status to an employee nor did they remit to her the required salary.

59.     In retaliation for Plaintiff Rechichar's complaints, Defendants reprimanded Plaintiff Rechichar under false pretenses; eventually, Defendants terminated Plaintiff Rechichar's

employment due to her complaints about not being paid and because of the misclassification. Within ~ 20 minutes of raising her wage concerns in writing, Defendants locked Plaintiff Rechichar out of the company's Jobber system and social media accounts.

60. Any discipline Plaintiff Rechichar received by Defendants was pretextual and designed to create a false basis for termination. Any discipline was not consistent with the APA's progressive discipline requirements and was not applied equally to other employees. Instead, they were selectively directed at Plaintiff Rechichar after she raised concerns regarding her misclassification, unpaid wages, and Defendants' breaches of the APA. The purpose and effect of any discipline was to push Plaintiff Rechichar out of the business so that Defendants could avoid paying her the agreed salary and deprive her of her contractual right to ten percent (10%) equity in Defendant Bud's.

61. Defendants regularly discriminated against Plaintiff Rechichar because she complained to them about not receiving her required wages and because of her complaints of their misclassification.

62. Defendants discharged Plaintiff Rechichar because she complained to them about not receiving her required wages and because of her complaints of their misclassification.

63. In discriminating against Plaintiff Rechichar and discharging her in retaliation for her complaints, Defendants violated the IWPCA.

64. As a direct and proximate result, Plaintiff Rechichar suffered damages of losing 60 weeks of salary, or $110,076.92.

65. As a direct and proximate result, Plaintiff Rechichar suffered damages in the amount of 10% of the shares of Defendant Bud's; Plaintiff Rechichar estimates the value of such shares as in excess of $100,000.00.

**WHEREFORE,** Plaintiff Brianna Y. Rechichar, respectfully prays for relief to the Court:

a. a finding that Defendants violated the IWPCA in retaliating against Plaintiff Rechichar ;

b. Enter a judgment against Defendants in any amount determined to be owed as damages for

their violations of the IWPCA;

c. Award reasonable attorneys' fees and costs; and/or

d. Grant such additional or alternative relief as this Honorable Court deems just and proper.

**COUNT V – BREACH OF EMPLOYMENT AGREEMENT - RECHICHAR V. DEFENDANTS**

66. Plaintiff Rechichar reincorporates Paragraphs 1-18, as if set forth in full herein for Paragraph 66.

67.     After closing on the APA, Plaintiff Rechichar became an employee of Defendants.

68.     Pursuant to the employment agreement contained in the APA, Defendants were required to pay Plaintiff Rechichar a salary of $1,834.62 per week. Ex. A, Section 2.4.

69.     In breach of the employment agreement contained in the APA, Defendants misclassified Plaintiff Rechichar as an independent contractor.

70.     In breach of the employment agreement contained in the APA, Defendants paid Plaintiff Rechichar a daily rate of $360.00 for each day worked, with the exception of her "on call" time and work during the weekends.

71.     Plaintiff Rechichar repeatedly complained to Defendants that they were in breach of the employment agreement contained in the APA by treating her as an independent contractor and failing to pay her the required salary.

72.     Despite being informed of their breaches of the employment agreement contained in the APA, Defendants did not change Plaintiff Rechichar's status to an employee nor did they remit to her the required salary.

73.     In retaliation for Plaintiff Rechichar's complaints, Defendants would reprimand Plaintiff Rechichar under false pretenses; eventually, Defendants terminated Plaintiff Rechichar's employment due to her complaints about not being paid and because of the misclassification.

74.     Within ~ 20 minutes of raising her wage concerns in writing, Defendants locked Plaintiff Rechichar out of the company's Jobber system and social media accounts.

75.     Any discipline Plaintiff Rechichar received by Defendants was pretextual and designed to create a false basis for termination. Any discipline was not consistent with the APA's progressive discipline requirements and was not applied equally to other employees. Instead, they were selectively directed at Plaintiff Rechichar after she raised concerns regarding her misclassification, unpaid wages, and Defendants' breaches of the APA. The purpose and effect of any discipline was to push Plaintiff Rechichar out of the business so that Defendants could avoid paying her the agreed salary and deprive her of her contractual right to ten percent (10%) equity in Defendant Bud's.

76.     Plaintiff Rechichar was not validly terminated "for cause" under the employment agreement contained in the APA. Moreover, Defendants did not apply the same disciplinary standards to other employees.

77.     Plaintiff Rechichar performed her responsibilities under the employment agreement contained in the APA, including performing assignments in a timely manner.

78.     As a direct and proximate result, Plaintiff Rechichar suffered damages of losing 60 weeks of salary, or $110,076.92.

79. As a direct and proximate result, Plaintiff Rechichar suffered damages in the amount of 10% of the shares of Defendant Bud's; Plaintiff Rechichar estimates the value of such shares as in excess of $100,000.00.

**WHEREFORE,** Plaintiff Brianna Y. Rechichar, respectfully prays for relief to the Court:

a. a finding that Defendants breached the employment agreement;

b. Enter a judgment against Defendants in any amount determined to be owed as damages for their breaches of the employment agreement;

c. Award reasonable attorneys' fees and costs; and/or

d. Grant such additional or alternative relief as this Honorable Court deems just and proper.

### COUNT VI - VIOLATION OF THE FLSA – ACOSTA V. DEFENDANTS

80. Plaintiff Acosta reincorporates Paragraphs 1-18, as if set forth in full herein for Paragraph 80.

81. Plaintiff Acosta began working for Defendants in November 2024 and was terminated in August 2025.

82. Plaintiff Acosta worked for the Defendants loading trucks, cutting trees, landscaping, mulching, performing snow removal, shoveling, snow plowing, and salting.

83. Plaintiff Acosta was required to clock in and out every day.

84. Defendants paid Plaintiff Acosta a daily rate of $260.00 for each day he worked. Plaintiff Acosta worked on average 48 hours per week, for an effective hourly rate of $27.08 per hour.

85. For a portion of his employment, Defendants misclassified Plaintiff Acosta as an independent contractor when in fact Plaintiff Acosta was an employee.

86. Plaintiff Acosta's wages were not based on the number of jobs performed or completed, nor was it based on the quality or efficiency of their performance.

87. Plaintiff Acosta was an "employee" of Defendants as that term is used in Section 203 of the FLSA because he was employed by Defendants to perform general worker duties, and they do not fall into any of the exceptions or exemptions for workers under the FLSA.

88. Throughout Plaintiff Acosta's employment, Defendants regularly scheduled and directed Plaintiff Acosta to work in excess of forty (40) hours per week.

89. Defendants did not pay Plaintiff Acosta not less than one and a half (1.5) times the regular rate at which she was employed during the hours worked in excess of forty (40) hours per week.

90. By engaging in this pay practice, Defendants deprived Plaintiff Acosta of his rights under the FLSA and the IMWL to receive time-and-a-half pay for their overtime hours.

91. Defendants owe Plaintiff Acosta one-and-a-half times the regular wage rate of pay for each recorded overtime hour she worked each week during the relevant time period, plus liquidated damages in the same amount.

92. Defendants' failure and refusal to pay Plaintiff Acosta overtime wages for hours worked in excess of forty (40) hours per week was a willful violation of the FLSA.

93. Plaintiff Acosta 's base overtime wages owed are $4,658.33.

**WHEREFORE,** Plaintiff Raymond "Chico" Acosta , respectfully prays for relief to the Court:

a. Finding that Defendant willfully violated the applicable wage provisions of the FLSA and by failing to pay overtime wages to Plaintiff Acosta ;

b. All damages available, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

c. Granting judgment in favor of Plaintiff Acosta for compensatory damages and liquidated damages to Plaintiff Acosta in an amount to be determined at trial;

d. Awarding pre-judgment and post-judgment interest to Plaintiff Acosta ;

e. Awarding all costs and reasonable attorney's fees incurred prosecuting the claims;

f. Awarding appropriate equitable and injunctive relief to remedy violations;

g. Awarding any further relief the Court deems just and proper.

**COUNT VII - FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE IMWL - ACOSTA V. DEFENDANTS**

94. Plaintiff Acosta incorporates Paragraphs 80-93, as if set forth in full herein for this Paragraph 94.

95. This count arises from Defendants' violation of the IMWL, by failing to pay Plaintiff Acosta Illinois mandated overtime wages for all hours worked in excess of 40 hours in each individual work week in violation of 820 ILCS 105/4a(1).

96. Defendants directed Plaintiff Acosta to work as an employee, but he was not compensated at least at the Illinois-mandated minimum wage rate for all time worked.

97. Plaintiff Acosta was entitled to be paid not less than time-and-one-half her regular pay rate for all hours worked in excess of forty (40) hours per week.

98. Defendants' failure to pay Plaintiff Acosta time-and-one half his regular rate of pay for all hours worked in excess of forty (40) hours per week violate the IMWL.

99. Pursuant to 820 ILCS 105/12(a), Plaintiff Acosta is entitled to recover all unpaid overtime for all hours worked in excess of forty (40) hours per week for three (3) years prior to the filing of this suit, treble the amount of such underpayments, 5% for each month the underpayments remain unpaid, plus attorney's fees and costs.

**Wherefore**, Plaintiff Raymond "Chico" Acosta respectfully requests that the Court:

a. Enter a judgment for all unpaid overtime worked by Plaintiff Acosta for hours worked in excess of forty hours per week for the three years preceding the filing of this lawsuit;

b. Award Statutory damages for Plaintiff Acosta , including treble damages and 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 105/12(a) and/or 815 ILCS §205/2;

c. Declare that Defendants have violated the IMWL;

d. Award reasonable attorneys' fees and costs as provided by the IMWL; and/or

e. Grant such additional or alternative relief as this Honorable Court deems just and proper.

### COUNT VIII – FAILURE TO PAY WAGES IN VIOLATION OF THE IWPCA - ACOSTA V. DEFENDANTS

100. Plaintiff Acosta reincorporates Paragraphs 1-18, as if set forth in full herein for Paragraph 100.

101. Plaintiff Acosta 's employment agreement with Defendants, contained in the APA, provided that Defendants would pay Plaintiff Acosta $1,325.00 per week. Ex. A, Section 2.4.

102. Plaintiff Acosta worked for Defendants for 43 weeks, from November 2024 until August 2025.

103. Pursuant to the Parties employment agreement in the APA, Plaintiff Acosta should have been paid $56,975.00.

104. Throughout her employment, Plaintiff Acosta was only paid $40,980.00.

105. Plaintiff Acosta was owed at least $15,995.00 plus any accrued vacation time and benefits at the time of his termination and such amount remains owed.

106. Plaintiff Acosta has requested payment of his owed wages from Defendants.

107. Defendant refused to pay his wages under the APA and any accrued vacation time and benefits.

108. The Illinois Wage Payment and Collection Act ("IWPCA") provides:

"Every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

820 ILCS 115/5.

109. Since Plaintiff Acosta's separation from Defendants, the next regularly scheduled payday for Plaintiff Acosta has passed.

110. Despite Plaintiff Acosta's demands for his compensation, Defendant has refused to pay his such compensation, including owed wages, accrued vacation time, and any other amounts owed.

111. As a result, Defendant has violated the IWPCA and is liable to Plaintiff Acosta for all unpaid wages, benefits, and accrued vacation time; 5% interest per month in accordance with Section 14 of the IWPCA; and Plaintiff Acosta's incurred costs and attorney's fees pursuant to Section 14 of the IWPCA.

   **WHEREFORE,** Plaintiff Raymond "Chico" Acosta, respectfully prays for relief to the Court:

a. a finding that Defendants violated the IWPCA;

b. Enter a judgment against Defendants in any amount determined to be owed as compensation;

c. 5% monthly interest, pursuant to the formula set forth in 820 ILCS § 115/14;

d. Award reasonable attorneys' fees and costs as provided by the IWPCA; and/or

e. Grant such additional or alternative relief as this Honorable Court deems just and proper.

### COUNT IX – RETALIATION IN IN VIOLATION OF THE IWPCA - ACOSTA V. DEFENDANTS

112. Plaintiff Acosta reincorporates Paragraphs 100-111, as if set forth in full herein for Paragraph 112.

113. The IWPCA provides:

"Any employer, or any agent of an employer, who discharges or in any other manner discriminates against any employee because that employee has made a complaint to his or her employer, to the Director of Labor or his or her authorized representative, in a public hearing, or to a community organization that he or she has not been paid in accordance with the provisions of this Act, or because that employee has caused to be instituted any proceeding under or related to this Act, or because that employee has testified or is about to testify in an investigation or proceeding under this Act, is guilty, upon conviction, of a Class C misdemeanor. An employee who has been unlawfully retaliated against shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, all legal and equitable relief as may be appropriate. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

820 ILCS 115/14(c)

114. After closing on the APA, Plaintiff Acosta became an employee of Defendants.

115. Pursuant to the employment agreement contained in the APA, Defendants were required to pay Plaintiff Acosta a salary of $1,325.00 per week. Ex. A, Section 2.4.

116. Instead of classifying Plaintiff Acosta as an employee, for a portion of his employment, Defendants misclassified Plaintiff Acosta as an independent contractor.

117. Instead of paying Plaintiff Acosta his salary of $1,325.00 per week, Defendants paid Plaintiff Acosta a daily rate of $260.00 for each day worked.

118. Plaintiff Acosta repeatedly complained to Defendants that they were in breach of the employment agreement contained in the APA by treating in failing to pay him the required salary.

118. Despite being informed of their failure to pay required wages, Defendants did not remit to him the required salary.

119. In retaliation for Plaintiff Acosta's complaints, Defendants reprimanded Plaintiff Acosta under false pretenses; eventually, Defendants terminated Plaintiff Acosta 's employment due to his complaints about not being paid properly.

120. Any discipline Plaintiff Acosta received by Defendants was pretextual and designed to create a false basis for termination. Any discipline was not consistent with the APA's progressive discipline requirements and was not applied equally to other employees. Instead, they were selectively directed at Plaintiff Acosta after he raised concerns regarding his unpaid wages and Defendants' breaches of the APA. The purpose and effect of any discipline was to push Plaintiff Acosta out of the business so that Defendants could avoid paying him the agreed salary.

121. Defendants regularly discriminated against Plaintiff Acosta because he complained to them about not receiving his required wages.

122. Defendants discharged Plaintiff Acosta because she complained to them about not receiving her required wages.

123. In discriminating against Plaintiff Acosta and discharging him in retaliation for her complaints, Defendants violated the IWPCA.

124. As a direct and proximate result, Plaintiff Acosta suffered damages of losing 61 weeks of salary, or $96,820.00.

**WHEREFORE,** Plaintiff Raymond "Chico" Acosta , respectfully prays for relief to the Court:

a. a finding that Defendants violated the IWPCA in retaliating against Plaintiff Acosta ;

b. Enter a judgment against Defendants in any amount determined to be owed as damages for their violations of the IWPCA;

c. Award reasonable attorneys' fees and costs; and/or

d. Grant such additional or alternative relief as this Honorable Court deems just and proper.

**COUNT X – BREACH OF EMPLOYMENT AGREEMENT - ACOSTA V. DEFENDANTS**

125. Plaintiff Acosta reincorporates Paragraphs 1-18, as if set forth in full herein for Paragraph 125.

126. After closing on the APA, Plaintiff Acosta became an employee of Defendants.

127. Pursuant to the employment agreement contained in the APA, Defendants were required to pay Plaintiff Acosta a salary of $1,325.00 per week. Ex. A, Section 2.4.

128. In breach of the employment agreement contained in the APA, Defendants misclassified Plaintiff Acosta as an independent contractor for a portion of his employment.

129. In breach of the employment agreement contained in the APA, Defendants paid Plaintiff Acosta a daily rate of $260.00 for each day worked.

130. Plaintiff Acosta repeatedly complained to Defendants that they were in breach of the employment agreement contained in the APA by treating her as an independent contractor and failing to pay her the required salary.

131. Despite being informed of their breaches of the employment agreement contained in the APA, Defendants did not did remit to him the required salary.

132. In retaliation for Plaintiff Acosta's complaints, Defendants would reprimand Plaintiff Acosta under false pretenses; eventually, Defendants terminated Plaintiff Acosta's employment due to his complaints about not being paid his proper wages.

133. Any discipline Plaintiff Acosta received by Defendants was pretextual and designed to create a false basis for termination. Any discipline was not consistent with the APA's progressive discipline requirements and was not applied equally to other employees. Instead, they were selectively directed at Plaintiff Acosta after he raised concerns regarding his unpaid wages and Defendants' breaches of the APA. The purpose and effect of any discipline was to push Plaintiff Acosta out of the business so that Defendants could avoid paying him the agreed salary.

134. Plaintiff Acosta was not validly terminated "for cause" under the employment agreement contained in the APA. Moreover, Defendants did not apply the same disciplinary standards to other employees.

135. Plaintiff Acosta performed his responsibilities under the employment agreement contained in the APA, including performing assignments in a timely manner.

136. As a direct and proximate result, Plaintiff Acosta suffered damages of losing 61 weeks of salary, or $96,820.00, plus any accrued benefits.

**WHEREFORE,** Plaintiff Raymond "Chico" Acosta, respectfully prays for relief to the Court:

a. a finding that Defendants breached the employment agreement;

b. Enter a judgment against Defendants in any amount determined to be owed as damages for their breaches of the employment agreement;

c. Award reasonable attorneys' fees and costs; and/or

d. Grant such additional or alternative relief as this Honorable Court deems just and proper.

/s/James M. Dore

**James Dore (#6296265) – DORE LAW OFFICES LLC**
**Daniel Schlade - LAW OFFICE OF DANIEL I. SCHLADE**
*Attorney For Plaintiffs*
6232 N. Pulaski Rd., 3rd Floor

Chicago, IL. 60646
P: 773-415-4898
E: james@dorelawoffices.com
danschlade@gmail.com

**PLAINTIFFS DEMAND TRIAL BY JURY**