E-FILED
Thursday, 18 September, 2025  03:19:41 PM
Clerk, U.S. District Court, ILCD

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT ("Agreement") is dated as of the date of the last signature below between **THE GOAT MOWING & COMPANY, LLC,** an Illinois limited liability company ("Seller"), **BRIANNA Y. RECHICHAR** ("Brianna") and **RAYMOND "CHICO" ACOSTA** ("Chico") and **BUD'S TREE CARE, INC.,** an Illinois corporation ("Buyer").

WHEREAS, Buyer wishes to purchase from Seller substantially all of the assets of Seller and wishes to engage Brianna and Chico to work for Buyer;

WHEREAS, Seller wishes to sell such assets to Buyer, and Brianna and Chico wish to work for Buyer on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth, and in reliance upon the representations and warranties contained herein, the parties mutually covenant and agree as follows:

### ARTICLE I: PURCHASE AND SALE OF ASSETS

1.1     Subject to the terms and conditions of this Agreement, on the Closing Date (as defined below) Seller will sell to Buyer and Buyer will purchase from Seller the following (referred to collectively herein as the "Assets"):

(a)     all of the machinery and equipment listed on Schedule A attached hereto and incorporated herein by reference (the "Equipment"); and

(b)     the client list on Schedule B attached hereto and incorporated herein by reference, the business name, goodwill and all other intangible property of Seller (the "Intangible Assets").

### ARTICLE II: PURCHASE PRICE/ALLOCATION/EMPLOYMENT

2.1     Purchase Price.  The purchase price for the Assets shall be the following (the "Purchase Price"):

(a)     Buyer shall assume from Seller the promissory note attached hereto as Schedule C, which shall have an outstanding principal balance on the Closing Date of **$95,206.68** (the "Note") and shall make all payments and perform all obligations of Seller as maker of the Note and shall hold Seller harmless for any future obligations under the Note;

2.2    Payment of Purchase Price. The Purchase Price, as offset by any credits set forth in this Agreement shall be paid in full at Closing by Buyer's execution and delivery of an Assignment and Assumption Agreement, effective as of the Closing Date, evidencing Buyer's assumption of the Note.

2.3    Allocation of Purchase Price. The Purchase Price shall be allocated as follows: $ 24,500 to Equipment and $ 70,706.68 to Intangible Assets.

2.4    Employment of Brianna and Chico. Upon Closing, Buyer shall employ Brianna and Chico, and they shall provide services to Buyer, on the following terms:

(a)    employment shall be for a term of two (2) years from the Closing Date, unless terminated earlier as set forth below;

(b)    annual salary for Brianna of $95,400 and for Chico of $68,900;

(c)    upon completion of the initial two (2) year term of employment, Brianna shall have the right to own ten percent (10%) of the shares of stock of Buyer;

(d)    Brianna and Chico (each an "Employee") each shall perform daily and weekly assignments, projects, and or jobs to the best of his/her abilities, and according to the standards and ethics adhered by Buds Tree Care.

(e)    In the event an Employee terminates his/her employment prior to the end of the initial two (2) year term, or in the event an Employee is terminated by Buyer "for cause," Employee shall have no further rights to compensation under this Agreement, and Employee shall not establish any business or work for any company in competition with Buyer's business within a fifty (50) mile radius of Buyer's principal place of business for a period of two (2) years from the date of termination of employment. For purposes of this Agreement, "Buyer's business" shall include landscaping, tree service, chemical spray, mowing, or outdoor services.

"For Cause" shall mean a situation where verbal warnings have been given and then an employee has been written up more than two times within a six month period, according to the same actions of discipline that all other employees are subject.

(f)    each Employee shall keep all information pertaining to Buds Tree Care, private and confidential. This includes information about the owners, personal property, finances, customers, dumpsites, business procedures, and ethics, and any other information that would be considered private to the company.

(g)    In the case that Buyer experiences any event outside the control of Buyer that prevents work from being done or prevents the business from being open during normal business hours or days of operation, the Employee is not guaranteed income during these events and will not be owed any income in the future for the days or weeks that are missed from these events. These events include rain delays, extreme heat, earthquakes, snowstorms, tornadoes, hurricanes, or any major weather interference as well as shut downs from governmental authorities or bankruptcy.

2.5    Receivables. All receivables for services performed up to and including the Closing Date, shall be billed and collected by Seller. All receivables for work performed after the Closing Date shall be billed and collected by Buyer.

### ARTICLE III:  CLOSING DATE

The Closing Date shall be on or before **October 31, 2024**, but used herein, the term "Closing Date" or "Closing" shall mean the close of business on such date, and the transfer of title to the Assets shall be effective as of the close of business on such date.

### ARTICLE IV: REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer as follows:

4.1    Authority of Seller. Seller has all necessary power and authority to make, execute, deliver and consummate this Agreement, and has taken all necessary actions required to be taken to authorize Seller to execute and deliver this Agreement and to perform all of its obligations, undertakings and agreements to be observed and performed hereunder.  This Agreement has been duly executed and delivered by Seller and is a valid and binding agreement of Seller. The execution and delivery of this Agreement by Seller does not violate any provisions of, or result in the acceleration of any obligation under any mortgage, lien, lease, agreement, license, instrument, law, ordinance, regulation, order, arbitration award, judgment or decree to which Seller is a party or by which Seller or the Assets are bound.

4.2    Material Changes.  Since December 31, 2023, there has not been in the affairs of Seller:

(a)    Any material loss, damage or destruction to the Assets, whether or not covered by insurance, or any waivers of rights which in the aggregate are material;

(b)    Any labor dispute or disturbance, litigation, or event or condition of any character adversely affecting the Assets;

(c)    Any mortgage, pledge, lien or encumbrance made on any of the Assets;

4.3    Title to Assets.  Seller has, and on the Closing Date will have, good, indefeasible and marketable title in and to the Assets, free and clear of any mortgage, pledge, lien, claim, security interest, charge, option or encumbrance of any nature whatsoever.  Seller has taken all steps necessary or otherwise to perfect and protect its interests in and to the Assets and have the full right and power to sell, transfer and assign the Assets without restriction.

4.4    Contracts.  There are no contracts to be assigned by Seller to Buyer.

4.5    Governmental and Other Contracts.   No authorization or approval of any governmental regulatory body or authority or any other person or entity is required in connection with the execution, delivery and performance by Seller of this Agreement or any of the instruments or agreements referred to herein.

4.6    Compliance with Laws; Licenses, Etc.  Seller is not in violation of any Federal, state or local law, statute, ordinance or regulation.

4.7    Brokers.  All negotiations relative to this Agreement and the transactions contemplated hereby have been carried on directly by Seller with Buyer without the intervention of any broker or finder.

4.8    Litigation.  There are no legal, administrative or other proceedings, investigation or inquiries, product liability, workmen's compensation or other asserted claims, judgments, injunctions or restrictions, pending or outstanding or, to the best knowledge of Seller, threatened against or involving Seller or any of the Assets which could materially affect Seller or the Assets, and to the best of Seller's knowledge, there is no basis for any of the foregoing proceedings.

4.9    Disclosure.  To the best of Seller's knowledge, no representation, warranty or covenant in this Agreement contains any untrue statement of a material fact, or omits to state a material fact necessary in light of the circumstances to make the statement contained herein or therein not misleading.

4.10    Other Material Adverse Information.  To the best of Seller's knowledge, except as set forth in this Agreement and the exhibits or schedules attached hereto, or in certificates or other documents delivered pursuant hereto, Seller has no knowledge of any facts which will or may reasonably be expected to have any material adverse effect on the value of the Assets.

**ARTICLE V: REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Seller as follows:

5.1    Brokers.    All negotiations relative to this Agreement and the transactions contemplated hereby have been carried on directly by Buyer with Seller without the intervention of any broker or finder.

5.2    Disclosure.    No representation, warranty or covenant in this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary in light of the circumstances to make the statement contained herein or therein not misleading.

5.3    Authority of Buyer.    Buyer has all necessary power and authority to make, execute, deliver and consummate this Agreement and has taken all necessary actions required to be taken to authorize Buyer to execute and deliver this Agreement and to perform all of its obligations, undertakings and agreements to be observed and performed by it hereunder.  This Agreement has been duly executed and delivered by Buyer and is a valid and binding agreement of Buyer.

## ARTICLE VI: PRE-CLOSING COVENANTS OF SELLER

6.1    Successor Tax Liability Filings.    Buyer shall cooperate with Seller in filing appropriate notices of the acquisition transaction contemplated by this Agreement with the Illinois Department of Revenue.

6.2    Covenants.  From the date of this Agreement to the Closing, Seller shall:

(a)    Maintain the Assets in as good a state of operating condition and repair as they are on the date hereof, except for ordinary depreciation and wear and tear.

(b)    Not pledge, lease, mortgage, encumber or otherwise dispose of (except with the prior written consent of Buyer) any of the Assets.

(c)    Keep in force all policies of insurance covering Seller's Assets.

(d)    Promptly notify Buyer in writing of any lawsuits, claims, proceedings or investigations of which Seller may become aware that may be threatened, brought, asserted or commenced by or against Seller, its officers or directors or involving Seller's business or the Assets in any way.

(e)    Make the Assets immediately available to Buyer and their authorized agents and accountants for inspection.

(f)    Cooperate with Buyer in resisting any claim of any broker, investment banker or third party to any brokerage or finder's fee or commission against Buyer in connection with the transaction contemplated by this Agreement.

(g)    Cooperate with Buyer in transferring to Buyer any permits and licenses held by Seller necessary for the operation of the Assets, or obtaining any such permits and licenses in Buyer' names.

## ARTICLE VII: PRE-CLOSING COVENANTS OF BUYER

From the date of this Agreement to the Closing, Buyer shall:

(a)    Upon Seller's request, cooperate with Seller in resisting any claim of any broker, investment banker or third party to any brokerage or finder's fee or commission against Seller in connection with the transaction contemplated by this Agreement.

(b)    Use its best efforts to cause all of the conditions in ARTICLE VIII over which it has control to occur in time for the Closing and to accomplish the transactions hereby contemplated.

## ARTICLE VIII: CONDITIONS TO BUYER' OBLIGATIONS

All obligations of Buyer to close under this Agreement are subject to the following conditions being satisfied on or prior to the Closing Date:

8.1    Representations and Warranties.  Each of Seller's representations and warranties in this Agreement and the exhibits and schedules hereto shall be true on the Closing Date.

8.2    Performance.  Seller shall have performed and complied with all covenants, agreements and conditions required by this Agreement to be performed or complied with by them prior to or at the Closing.

8.3    No Adverse Change.  Since the date of this Agreement, no material adverse changes in the Assets or the business of Seller shall occur.

8.4    Documents.  All documents required to be delivered by Seller at the Closing shall have been delivered to Buyer in a form satisfactory to Buyer.

8.5    Employment Agreements.  Buyer shall have entered into employment agreements with Brianna and Chico on the terms and conditions set forth in this Agreement.

## ARTICLE IX: CONDITIONS TO SELLER'S OBLIGATIONS

All obligations of Seller to close under this Agreement are subject to the fulfillment as of the Closing Date of each of the following conditions:

9.1    Representations and Warranties. Each of Buyer' representations and warranties in this Agreement and the exhibits and schedules hereto shall be true at the Closing Date.

9.2    Performance. Buyer shall have complied with and performed all covenants and conditions of this Agreement required to be performed and complied with by it on or before the Closing Date.

9.3    Purchase Price and Documents. That portion of the Purchase Price to be paid at Closing pursuant to Paragraph 2.1 hereof and all documents required to be delivered to Seller at Closing shall have been delivered to Seller in a form satisfactory to Seller.

## ARTICLE X: DELIVERIES AT CLOSING

10.1    By Seller. At Closing, Seller shall deliver to Buyer the following:

10.1.1 Bill of Sale. A warranty bill of sale and assignment for the Assets in the form attached hereto and made a part hereof as Exhibit A.

10.1.2 Certificates of Title. All certificates of title and any other documents necessary to transfer the Assets to Buyer.

10.2    By Buyer. At Closing, Buyer shall deliver to Seller the following:

10.2.1 Purchase Price. An executed Assignment and Assumption Agreement representing Buyer's assumption of the Note.

10.3    Additional Documents. Seller shall deliver to Buyer such additional documents as shall be required or as may be appropriate in order to vest effectively in Buyer good, indefeasible and marketable title to the Assets, free and clear of all security interests, encumbrances, charges or restrictions whatsoever and to carry out the transactions contemplated by this Agreement. Seller shall also, at the request of Buyer, take all action necessary to put Buyer in actual possession and control of the Assets and shall execute and deliver such further instruments of transfer and conveyance, including without limitation, assignments of trademarks and trade names, and take such other action as Buyer may reasonably request in order to more effectively transfer and convey to Buyer any of the Assets, to confirm the title of Buyer thereto and to assist Buyer in exercising any rights with respect thereto.

## ARTICLE XI: EXPENSES

Each party shall pay all of its expenses, in connection with the authorization, preparation, execution and performance of this Agreement, including without limitation all fees and expenses of agents, representatives, counsel, accountants, consultants, brokers and finders.

## ARTICLE XII: RESTRICTIVE COVENANTS

For a period of five (5) years following the Closing Date, neither Seller nor any of its agents or affiliates shall, either directly or indirectly, on behalf of itself or any party other than Buyer and Buyer's successors and assigns:

a.      Solicit, attempt to obtain, accept or in any manner transact lawncare business of any kind or nature with, from, or on behalf of any of the clients which are included within the list of Assets transferred to Buyer pursuant to this Agreement ("Prohibited Activity");

b.      Promote, encourage, assist or arrange for the conduct of any Prohibited Activity by any person or entity other than the Buyer and its successors and assigns, including but not limited to any new entity formed by Seller or their agents;

c.      Invest in the capital stock or otherwise acquire any ownership interest in any person or entity, other than Buyer and its successors and assigns, which is engaged, directly or indirectly, in any Prohibited Activity;

d.      Advise, counsel or recommend to any clients of Buyer or its successors and assigns, including but not limited to those clients which are the subject of this Agreement, that they terminate or alter their lawncare business with Buyer or its successors and assigns, as the case may be; or

e.      Recruit, solicit, or induce any employee or agent of Buyer or its successors and assigns to terminate his or her employment or other relationship with Buyer or its successors and assigns, as the case may be, in order to become employed by or otherwise enter into a business relationship with Seller if such employment or other relationship would relate to the performance of Prohibited Activity.

The parties acknowledge that the principal subject matter of this Agreement is the goodwill and client relationships of Seller and further acknowledge that the restrictions set forth

in this Section XII are necessary to preserve and protect the value of such items and other legitimate business interests of the Buyer and its successors and assigns.

The parties further acknowledge that a breach by Seller of any covenant or restriction set forth in this Section XII would result in immediate and irreparable harm to the Buyer and its successors and assigns for which no adequate remedy at law would exist and that Buyer and its successors and assigns shall be entitled to temporary or permanent injunctive or other equitable relief, with or without being required to affirmatively prove irreparable harm.

## ARTICLE XIII: INDEMNIFICATION

After the Closing, the parties shall indemnify each other as follows:

13.1    By Seller.  Seller shall indemnify and hold harmless Buyer against any loss, damage or expense (including court costs and reasonable attorneys' fees) suffered by Buyer resulting from (1) any breach by Seller of this Agreement, (2) any inaccuracy in or breach of any representations, warranties or covenants made herein or in any document, certificate or exhibit delivered in accordance with the provisions of this Agreement, (3) any attempt (whether or not successful) by any person to cause or require Buyer to pay or discharge any debt, obligation, liability or commitment of Seller not assumed by Buyer pursuant to this Agreement, including but no limited to obligations to employees accruing prior to the Closing, (4) any state or Federal tax attributable to any period of Seller' operation prior to the Closing Date, (5) any claim arising out of the operation of Seller' business prior to the Closing Date, (6) any claim made by a third party alleging facts which, if true, would entitle Buyer to indemnification pursuant to (1), (2), (3) (4) or (5) above, or (7) any failure of Seller to comply with their obligations under this Paragraph 13.1.

13.2    By Buyer.  Buyer agree to indemnify and hold Seller harmless against any loss, damage or expense (including cost and reasonable attorneys' fees) suffered by Seller resulting from (1) any breach by the Buyer of this Agreement, or (2) any inaccuracy in or breach of any representations, warranties, or covenants of Buyer made herein or in any document, certificate or exhibit delivered by Buyer in accordance with the provisions of this Agreement, or (3) any attempt (whether or not successful) by any person to cause or require Seller to pay or discharge any debt, obligation, liability or commitment of Buyer or assumed by Buyer pursuant to this Agreement, including but not limited to obligations to Buyer's employees, if any, accruing after the Closing; (4) any claim made by a third party alleging facts which, if true, would entitle Seller to indemnification pursuant to (1), (2) or (3) above, (5) any failure of Buyer to comply with its obligations under this Paragraph 13.2.

## ARTICLE XIV: GENERAL

14.1    Actions After the Closing. After the date of Closing, the parties shall execute and deliver such other and further instructions and perform such other and further acts as may reasonably be required fully to consummate the transactions contemplated hereby.

14.2    Representations and Warranties. All representations and warranties made by Seller to Buyer, and all representations and warranties made by Buyer and Seller in this Agreement are true to the best of each party's knowledge at the Closing Date.

14.3    Execution of Counterparts. For the convenience of the parties, this Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

14.4    Notices. All notices, requests, consents and other communications required or permitted under this Agreement shall be in writing and hand delivered or mailed or emailed with receipt confirmed to the recipient at the address set forth on the signature page below, or to such other address as any party may designate by notice complying with the terms of this paragraph.

14.5    Assignment, Successors and Assigns. This Agreement shall be binding upon the parties hereto, their heirs, personal representatives, successors and assigns.

14.6    Applicable Law. This Agreement shall be construed and governed by the internal law, and not the law of conflicts, of the state of Illinois applicable to agreement made and to be performed in Illinois.

14.7    Entire Agreement. This Agreement constitutes the entire agreement among the parties hereto, and no party hereto shall be bound by any communications between them on the subject matter hereof. Any prior oral or written agreements or letters of intent among the parties shall, upon the execution of this Agreement, be null and void.

14.8    Reliance by Buyer Upon Representations and Warranties. The parties mutually agree that, notwithstanding any right of Buyer to fully investigate the affairs of Seller, and notwithstanding any knowledge of facts determined or determinable by Buyer pursuant to such investigation or right of investigation, Buyer have the right to fully rely upon the representations and warranties of Seller contained in this Agreement and on the accuracy of any document, certificate, exhibit or schedule given or delivered to Buyer pursuant to this Agreement.

14.9   <u>Survival of Provisions</u>. Any provision which by its terms relates to performance after Closing shall survive the Closing, including without limitation the employment provisions in Section II and the restrictive covenants in Section XII.

14.10  <u>Heading and Definitions</u>.  The headings in the sections of this Agreement are inserted for convenience only and shall not constitute a part hereof or affect the meaning or interpretation hereof.

IN WITNESS WHEREOF, each of the parties has executed this Agreement as of the day and year first above written.

**SELLER:**                                     **BUYER:**

**The Goat Mowing & Company, LLC**              **Bud's Tree Care, Inc.**

By: _____               By: _____

Date: 10/24/24                                  Date: 10-24-24

_____                    _____
                                                ID A9Xfx6kWMK447SDBJ8VsxNiN
**BRIANNA Y. RECHICHAR ("Brianna")**            **RAYMOND "CHICO" ACOSTA ("Chico")**

Date:                                           **Date:**   10/30/2024

**SCHEDULE A:  EQUIPMENT**

**SCHEDULE B:  INTANGIBLE ASSETS**

## SCHEDULE C:  PROMISSORY NOTE

## EXHIBIT A

### Bill of Sale and Assignment

KNOW ALL MEN BY THESE PRESENTS, that ("Seller"), in consideration of the sum of ten dollars ($10.00), and other good and valuable consideration, in hand paid, the receipt of which is hereby acknowledged, and in accordance with the Asset Purchase Agreement by and between Seller and ("Buyer"), dated as of _10/24/24_, does hereby sell, convey, transfer, assign and deliver unto Buyer all of its machinery, equipment, inventory, supplies, contracts, leases, intangible assets and all other Assets, as such term is defined in said Asset Purchase Agreement, including but not limited to those set forth in Schedules A and B attached to said Asset Purchase Agreement (the "Assets").

Seller represents and warrants to Buyer that: (i) Seller has legal title to the Assets free and Clear of all liens, encumbrances and security interests, (ii) Seller has complete and unrestricted power to sell, convey, transfer, assign and deliver the Assets to Buyer, and (iii) this Bill of Sale and Assignment is binding and enforceable in accordance with its terms and effective for its purpose.

OTHERWISE, THE UNDERSIGNED MAKES NO EXPRESS OR IMPLIED WARRANTIES TO BUYER CONCERNING THE PROPERTY.  BUYER IS ACCEPTING SUCH PROPERTY "AS IS", "WHERE IS", "WITH ALL DEFAULTS", AND THE UNDERSIGNED EXPRESSLY DISCLAIMS THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PURPOSE.

Dated: _10/24/24_

_____
[SELLER]

"Schedule A"

**The Goat Mowing and Company**
**Equipment/Tool list as of 10/17/24**

2020 Toro Grandstand
2014 Toro 32" rider
2021 Toro Resident walk behind
2019 Toro Pro Walk
Br600 Stihl Blower
Br800 Stihl Blower
Stihl Bg55
Stihl Bg86
Stihl String Trimmer Rx111
Stilh String Trimmer Rx111
Stihl String Trimmer Rx111 (new)
Stihl extendo and all attachments
Stihl Hedge Trimmer Hs46
Stihl Hedge Trimmer Hs46 NEW
Trailers x 2 with titles and registration
Toro Snow Blower
Craftsman snowblower
Snow Shovels
Rakes
Impact Milwakee Guns
& All Tools

"Schedule B"




" Schedule C "

**ASSIGNMENT OF PROMISSORY NOTE**

This ASSIGNMENT OF PROMISSORY NOTE (this "Assignment") is made as of the 24th day of October, 2024, by and between THE GOAT MOWING & COMPANY, LLC, an Illinois limited liability company, hereinafter known as ("Assignor"), and BUD'S TREE CARE, INC., an Illinois corporation.

WHEREAS, Assignor is the Maker under a certain Promissory Note dated  6/28/24 , a copy of which is attached hereto and incorporated herein by reference (the "Promissory Note"), which evidences a promise to pay BRIANNA Y. RECHICHAR the original principal sum of $95,400.00;

WHEREAS, Assignee is acquiring the assets of Assignor and has agreed to assume the Promissory Note from Assignor as consideration for the asset purchase transaction;

NOW, THEREFORE, in exchange for the mutual promises set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Assignor does hereby grant, convey, transfer and assign to Assignee, its successors and assigns, the Promissory Note and all of the right, title, interest, and obligations of Assignor as the Maker under the Promissory Note.

2.      Assignee does hereby accept the foregoing Assignment and does hereby agree to perform any and all obligations to be performed by Maker under the terms of said Promissory Note and does agree to hold Assignor harmless on said Promissory Note.

4.      Assignor hereby agrees to indemnify Assignee against, and hold Assignee harmless from any and all costs, liability, loss, damage or expense, including without limitation, reasonable attorneys' fees and court costs, relating to any of the Assignor's obligations under the Promissory Note which have originated on or prior to the date hereof.

5.      Assignee hereby agrees to indemnify Assignor against, and hold Assignor harmless from any and all costs, liability, loss, damage or expense, including without limitation, reasonable attorneys' fees and court costs, relating to any of the Assignee's obligations under the Promissory Note which have originated after the date hereof.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the parties hereto have executed this Assignment of Promissory Note as of the date above.

ASSIGNOR:
THE GOAT MOWING & COMPANY, LLC,
An Illinois limited liability company

By: _____

ASSIGNEE:
BUD'S TREE CARE, INC.,
An Illinois corporation

By: _____

## PROMISSORY NOTE

FOR VALUE RECEIVED, **THE GOAT MOWING & COMPANY, LLC**, an Illinois limited liability company ("Company"), promises to pay to the order of **BRIANNA Y. RECHICHAR**, an individual resident of the State of Illinois ("Holder"), the principal sum of **NINETY FIVE THOUSAND FOUR HUNDRED DOLLARS AND NO CENTS ($95,400.00)**, with interest from the date hereof at the rate **of EIGHT PERCENT (8.00%)** per annum on the unpaid principal balance, to be payable in monthly installment payments in the amount of **$700.01**, as shown on the attached amortization schedule, with the first such payment due **August 1, 2024**, and with an additional payment due on the first of each month thereafter until **July 1, 2027** **("Maturity Date")**, on which date all principal and all accrued and unpaid interest shall be due and payable in full.

Privilege is reserved prepay the indebtedness in whole or in part at any time without penalty or premium.    All payments shall be applied to accrued interest first and then to principal.

Both principal and interest shall be payable to Holder at the following address, or in such other manner as Holder may communicate from time to time in writing:

**BRIANNA Y. RECHICHAR**

_Brianna Rechichar_
_____

The sureties, endorsers, and guarantors upon this Note hereby consent that time of payment hereof may be extended without notice, and without releasing them from liability hereon, and hereby waive presentment for payment demand and notice of dishonor, protest and notice of protest hereof.

It is expressly understood and agreed that if any portion of an installment shall remain due and unpaid for a period of thirty (30) days after the same shall have become due and payable as

herein provided, then the principal sum, or any balance remaining unpaid thereon, together with all the arrearages thereon, shall, at the option of the legal holder hereof, be immediately due and payable, without notice, and shall be collectible immediately or at any time after such default.

In any action taken to interpret or enforce this Promissory Note, the prevailing party shall be entitled to recover costs and reasonable attorney fees.

DATED at Champaign, Illinois, this 28 day of June, 2024

THE GOAT MOWING & COMPANY, LLC

By: _____
Jose M. Cisneros, Manager

STATE OF ILLINOIS      )
                         ) SS
COUNTY OF CHAMPAIGN   )

The undersigned, a Notary Public in and for the County and State aforesaid, hereby certifies that **JOSE M. CISNEROS, as Manager of THE GOAT MOWING & COMPANY, LLC**, an Illinois limited liability company, personally known to me to be the same person whose name is subscribed to the foregoing Promissory Note, appeared before me this day in person and acknowledged that he signed, sealed and delivered said instrument as his free and voluntary act as Manager of the aforesaid Company, for the uses and purposes therein set forth.

GIVEN under my hand and Notarial Seal this 28 day of June, 2024.

OFFICIAL SEAL
KAITLYN GRAHAM
Notary Public, State of Illinois
Commission No. 900698
My Commission Expires September 05, 2027

_____
Notary Public


# Loan Amortization Schedule

## Enter Values

| | |
|---|---|
| Loan amount | $95,400.00 |
| Annual interest rate | 8.00% |
| Loan period in years | 30 |
| Number of payments per year | 12 |
| Start date of loan | 8/1/2024 |
| Optional extra payments | |

## Loan Summary

| | |
|---|---|
| Scheduled payment | $700.01 |
| Scheduled number of payments | 360 |
| Actual number of payments | 360 |
| Total early payments | $0.00 |
| Total interest | $22,605.67 |
| Lender name | BRIANNA Y. RECHICHAR |

| Payment Number | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 8/1/2024 | $95,400.00 | $700.01 | $0.00 | $700.01 | $64.01 | $636.00 | $95,335.99 | $636.00 |
| 2 | 9/1/2024 | $95,335.99 | $700.01 | $0.00 | $700.01 | $64.44 | $635.57 | $95,271.55 | $1,271.57 |
| 3 | 10/1/2024 | $95,271.55 | $700.01 | $0.00 | $700.01 | $64.87 | $635.14 | $95,206.68 | $1,906.72 |
| 4 | 11/1/2024 | $95,206.68 | $700.01 | $0.00 | $700.01 | $65.30 | $634.71 | $95,141.38 | $2,541.43 |
| 5 | 12/1/2024 | $95,141.38 | $700.01 | $0.00 | $700.01 | $65.74 | $634.28 | $95,075.65 | $3,175.70 |
| 6 | 1/1/2025 | $95,075.65 | $700.01 | $0.00 | $700.01 | $66.17 | $633.84 | $95,009.47 | $3,809.54 |
| 7 | 2/1/2025 | $95,009.47 | $700.01 | $0.00 | $700.01 | $66.61 | $633.40 | $94,942.86 | $4,442.94 |
| 8 | 3/1/2025 | $94,942.86 | $700.01 | $0.00 | $700.01 | $67.06 | $632.95 | $94,875.80 | $5,075.89 |
| 9 | 4/1/2025 | $94,875.80 | $700.01 | $0.00 | $700.01 | $67.51 | $632.51 | $94,808.29 | $5,708.40 |
| 10 | 5/1/2025 | $94,808.29 | $700.01 | $0.00 | $700.01 | $67.96 | $632.06 | $94,740.34 | $6,340.45 |
| 11 | 6/1/2025 | $94,740.34 | $700.01 | $0.00 | $700.01 | $68.41 | $631.60 | $94,671.93 | $6,972.05 |
| 12 | 7/1/2025 | $94,671.93 | $700.01 | $0.00 | $700.01 | $68.87 | $631.15 | $94,603.06 | $7,603.20 |
| 13 | 8/1/2025 | $94,603.06 | $700.01 | $0.00 | $700.01 | $69.32 | $630.69 | $94,533.74 | $8,233.89 |
| 14 | 9/1/2025 | $94,533.74 | $700.01 | $0.00 | $700.01 | $69.79 | $630.22 | $94,463.95 | $8,864.11 |
| 15 | 10/1/2025 | $94,463.95 | $700.01 | $0.00 | $700.01 | $70.25 | $629.76 | $94,393.70 | $9,493.87 |
| 16 | 11/1/2025 | $94,393.70 | $700.01 | $0.00 | $700.01 | $70.72 | $629.29 | $94,322.98 | $10,123.16 |

| Payment Number | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 17 | 12/1/2025 | $94,322.98 | $700.01 | $0.00 | $700.01 | $71.19 | $628.82 | $94,251.79 | $10,751.98 |
| 18 | 1/1/2026 | $94,251.79 | $700.01 | $0.00 | $700.01 | $71.67 | $628.35 | $94,180.12 | $11,380.33 |
| 19 | 2/1/2026 | $94,180.12 | $700.01 | $0.00 | $700.01 | $72.14 | $627.87 | $94,107.98 | $12,008.20 |
| 20 | 3/1/2026 | $94,107.98 | $700.01 | $0.00 | $700.01 | $72.62 | $627.39 | $94,035.35 | $12,635.58 |
| 21 | 4/1/2026 | $94,035.35 | $700.01 | $0.00 | $700.01 | $73.11 | $626.90 | $93,962.24 | $13,262.48 |
| 22 | 5/1/2026 | $93,962.24 | $700.01 | $0.00 | $700.01 | $73.60 | $626.41 | $93,888.65 | $13,888.90 |
| 23 | 6/1/2026 | $93,888.65 | $700.01 | $0.00 | $700.01 | $74.09 | $625.92 | $93,814.56 | $14,514.82 |
| 24 | 7/1/2026 | $93,814.56 | $700.01 | $0.00 | $700.01 | $74.58 | $625.43 | $93,739.98 | $15,140.25 |
| 25 | 8/1/2026 | $93,739.98 | $700.01 | $0.00 | $700.01 | $75.08 | $624.93 | $93,664.90 | $15,765.19 |
| 26 | 9/1/2026 | $93,664.90 | $700.01 | $0.00 | $700.01 | $75.58 | $624.43 | $93,589.32 | $16,389.62 |
| 27 | 10/1/2026 | $93,589.32 | $700.01 | $0.00 | $700.01 | $76.08 | $623.93 | $93,513.24 | $17,013.55 |
| 28 | 11/1/2026 | $93,513.24 | $700.01 | $0.00 | $700.01 | $76.59 | $623.42 | $93,436.65 | $17,636.97 |
| 29 | 12/1/2026 | $93,436.65 | $700.01 | $0.00 | $700.01 | $77.10 | $622.91 | $93,359.55 | $18,259.88 |
| 30 | 1/1/2027 | $93,359.55 | $700.01 | $0.00 | $700.01 | $77.61 | $622.40 | $93,281.94 | $18,882.28 |
| 31 | 2/1/2027 | $93,281.94 | $700.01 | $0.00 | $700.01 | $78.13 | $621.88 | $93,203.80 | $19,504.16 |
| 32 | 3/1/2027 | $93,203.80 | $700.01 | $0.00 | $700.01 | $78.65 | $621.36 | $93,125.15 | $20,125.52 |
| 33 | 4/1/2027 | $93,125.15 | $700.01 | $0.00 | $700.01 | $79.18 | $620.83 | $93,045.97 | $20,746.35 |
| 34 | 5/1/2027 | $93,045.97 | $700.01 | $0.00 | $700.01 | $79.70 | $620.31 | $92,966.27 | $21,366.66 |
| 35 | 6/1/2027 | $92,966.27 | $700.01 | $0.00 | $700.01 | $80.24 | $619.78 | $92,886.03 | $21,986.43 |
| 36 | 7/1/2027 | $92,886.03 | $700.01 | $0.00 | $700.01 | $80.77 | $619.24 | $92,805.26 | $22,605.67 |

# eSignature Details

**Signer ID:**          **A9Xfx6kWMK447SDBJ8VsxNiN**
Signed by:              Raymond Chico Acosta
Sent to email:          raymondthegoat95@gmail.com
IP Address:             104.28.92.188
Signed at:              Oct 30 2024, 10:22 am CDT